STATE OF NORTH CAROLINA v. WILLIAM CHRISTOPHER GREGORY

No. 19A97

(Filed 8 May 1998)

**1. Evidence and Witnesses § 1235 (NCI4th)— first-degree murder—confession—not custodial—admissible**

The trial court did not err in a capital first-degree murder prosecution by denying defendant's motion to suppress statements made to a detective. Although defendant contends that he was in custody and had not been advised of his *Miranda* rights prior to giving the statements, defendant went to the jail entirely of his own volition and not at the request of any law enforcement officer; he stated that he had just shot two people without any questioning by officers; and nothing in the record indicates that defendant had any reason to believe that he was not free to go at any time he wished prior to his initial statements.

**2. Jury § 103 (NCI4th)— first-degree murder—jury selection—separate voir dire denied—absence of findings—no particular harm identified by defendant**

The trial court did not abuse its discretion in a capital first-degree murder prosecution by denying defendant's motion for individual jury *voir dire*. While defendant argues that the ruling was an abuse of discretion because of an absence of findings of fact showing the trial court's rationale, counsel for the defense produced no evidence or argument as to why jurors should be questioned by individual *voir dire* and, in fact, while discussing

STATE v. GREGORY

[348 N.C. 203 (1998)]

the motion before the trial court, acknowledged that there had been a change of venue and that the publicity in the new venue would not be as great as in the old. Defendant failed to identify any possible particular harm resulting from his having been required to question each of the prospective jurors in the presence of the other jurors.

**3. Criminal Law § 475 (NCI4th Rev.)— first-degree murder— prosecutor's argument—no guilty plea to second-degree— response to defense argument**

There was no error in the guilt phase of a capital first-degree murder prosecution where the prosecutor rhetorically asked the jury, "He hasn't pled guilty to those three things, has he? . . ." after counsel for defendant argued that the jury should find defendant guilty of second-degree murder. There was no criticism of defendant for failing to plead guilty; instead, the prosecutor was simply replying to the argument defense counsel had used.

**4. Criminal Law § 475 (NCI4th Rev.)— first-degree murder— prosecutor's argument—not a comment on right to vigorous defense**

There was no error in the prosecutor's argument in the guilt phase of a capital first-degree murder prosecution where defendant contended that the prosecutor improperly commented on defendant's exercise of his right to fully and vigorously defend himself in a scenario involving the suppression of evidence due to a defense motion. The prosecutor was rebutting the assertion made by defense counsel in closing arguments that a State's witness was not believable because he was the beneficiary of a lenient plea bargain. He explained his reason for the plea agreement in hypothetical terms and the argument was a proper response to the defense argument.

**5. Criminal Law § 432 (NCI4th Rev.)— first-degree murder— prosecutor's argument—not a comment on defendant not testifying**

There was no gross impropriety requiring the trial court to intervene on its own motion in the prosecutor's argument in a capital first-degree murder prosecution where the prosecutor commented he was sorry that defendant had not read his statement to a detective and that perhaps he ought to let defendant look at his statement in the courtroom. It is clear that the prosecutor was simply refuting the claim by the defense that the detec-

tive's notes and the recording of defendant's statement were inaccurate and that the prosecutor was not commenting on defendant's decision not to testify. The prosecutor's comment was isolated and not an extended reference to defendant's exercise of his right not to testify.

## 6. Criminal Law § 690 (NCI4th Rev.)— capital sentencing—peremptory instruction—defendant's age—no plain error

There was no plain error in a capital sentencing proceeding in the court's peremptory instruction on the statutory mitigating circumstance of defendant's age, N.C.G.S. § 15A-2000(f)(7), where defendant requested a peremptory instruction on the statutory mitigating circumstance regarding his age at the time of the crime, the State conceded that all of the evidence showed defendant was eighteen when he committed the murder, the trial court gave an instruction in accord with approved pattern jury instructions, and defendant did not object or request any clarification.

## 7. Criminal Law § 1402 (NCI4th Rev.)— death penalty—not disproportionate

A sentence of death was not disproportionate where the record fully supports the aggravating circumstances found by the jury, there is no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration, and this case is more similar to certain cases in which the death sentence was found proportionate than to those in which it was found disproportionate.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Freeman, J., on 7 November 1996 in Superior Court, Davidson County, upon a jury verdict finding defendant guilty of first-degree murder on the theory of premeditation and deliberation and under the felony murder rule. Defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments was allowed by the Supreme Court on 18 July 1997. Heard in the Supreme Court 10 February 1998.

*Michael F. Easley, Attorney General, by William P. Hart, Special Deputy Attorney General, for the State.*

*J. Clark Fischer for defendant-appellant.*

MITCHELL, Chief Justice.

On 4 January 1993, defendant was indicted by the Davie County Grand Jury for first-degree murder, felonious breaking and entering, and assault with a deadly weapon with intent to kill inflicting serious injury. He was tried capitally in August 1994 and found guilty of all charges. The jury recommended a sentence of death for the murder conviction, and the trial court sentenced defendant accordingly. The trial court also sentenced defendant to imprisonment for the other crimes.

On appeal, this Court found error and remanded for a new trial. *State v. Gregory*, 342 N.C. 580, 467 S.E.2d 28 (1996). Venue was subsequently changed to Davidson County. Defendant was retried capitally at the 28 October 1996 Criminal Session of Superior Court, Davidson County. The jury found defendant guilty of all charges and, after a separate capital sentencing proceeding, recommended a sentence of death for the first-degree murder conviction. The trial court sentenced defendant to death for the murder and to consecutive terms of imprisonment of twenty years for felonious assault and ten years for felonious breaking and entering. Defendant appeals to this Court as of right from the sentence of death. His motion to bypass the Court of Appeals on his appeal of the remaining convictions was allowed by this Court on 18 July 1997.

The State's evidence tended to show *inter alia* that on 10 August 1992, seventeen-year-old Evette Howell lived with her parents in Mocksville, along with her fifteen-year-old brother, Fonzie, and her eighteen-month-old son, Xavier. Evette's parents left for work shortly before 7:00 a.m. Shortly after 8:00 a.m., Evette was found dead in the middle of her bed. Her body was partially covered with a bedsheet, and a fired handgun lay next to her body. Her infant son was found alive and lying next to her in the bed. Evette had been killed by a small-caliber gunshot wound to the left side of her head.

In the next bedroom, Fonzie was found lying on the floor, bloody. One fired shell casing and two unfired bullets were lying next to him on the floor. Fonzie was taken to the emergency room at Baptist Hospital. He arrived in a coma and was placed on a ventilator and a feeding tube. He spent the next six weeks in the intensive care unit and another fifteen months undergoing intensive medical treatment.

Defendant, William Christopher Gregory, had been Evette's boyfriend for some three years and was the father of Evette's child.

In June 1992, after the last of many breakups with defendant, Evette came home with a black eye. The morning of Evette's murder, defendant and his cousin Gabe Wilson went to Evette's house with a shotgun, shells, and duct tape. When they arrived at the home, defendant got out of the car with a screwdriver, a hammer, and the duct tape. Defendant told Wilson he was going to kidnap Evette and that if Fonzie got in the way, he was going to kill him. Defendant broke into the house, yelling for Wilson to follow him. Defendant went into Evette's parents' room and took a .25-caliber automatic handgun. Defendant then went into Evette's bedroom and shut the door. Wilson heard Evette yell, "Fonzie, Fonzie." As Wilson began to exit the house, he heard a gunshot. Wilson was outside when he heard Fonzie say, "You got me Chris, you got me." He immediately heard another gun shot. Within a couple of minutes, defendant came out of the house and told Wilson that he had shot Evette and had then gone into Fonzie's room. Defendant's gun jammed, so he hit Fonzie over the head several times. He unjammed the gun, shot Fonzie in the face and then took the gun to Evette's room and put it on the bed beside her. Defendant told Wilson that Evette and Fonzie were both dead.

Upon leaving, defendant drove to his grandfather's house and told him that he had just shot Evette and Fonzie Howell and that Wilson had nothing to do with the shooting. Defendant, Wilson, and defendant's grandmother then went to the Davie County Jail, where defendant told Detective Allan Whitaker he had shot two people. Defendant was taken into custody and advised of his *Miranda* rights at 9:25 a.m. on 10 August 1992. Defendant signed a waiver of rights form and gave a statement to Detective Whitaker, which he signed after it was reduced to writing.

[1] By assignment of error, defendant contends that the trial court committed prejudicial error when it denied his motion to suppress the initial statements he made to Detective Whitaker shortly after he shot Evette and Fonzie Howell. Defendant further contends that he was in custody when he gave his initial statements and had not been advised of his *Miranda* rights prior to giving those statements. These contentions are without merit.

This Court has consistently held that the rule of *Miranda* applies only where a defendant is subjected to custodial interrogation. *State v. Gaines*, 345 N.C. 647, 661, 483 S.E.2d 396, 405, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 177 (1997). As we discussed in *Gaines*, "the definitive inquiry is whether there was a formal arrest or a restraint

on freedom of movement of the degree associated with a formal arrest." *Id.* at 662, 483 S.E.2d. at 405; *see also Stansbury v. California*, 511 U.S. 318, 128 L. Ed. 2d 293 (1994). The United States Supreme Court has held that *Miranda* warnings are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Oregon v. Mathiason*, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719 (1977).

In the present case, defendant was not restrained or confined in any way. Defendant went to the jail entirely of his own volition, not at the request of any law enforcement officer. Without any questioning by officers, he stated he had just shot two people. Nothing in the record indicates that, at any time prior to his initial statements to Detective Whitaker, defendant had any reason to believe that he was not free to go at any time he wished. This assignment of error is overruled.

[2] By another assignment of error, defendant contends that the trial court did not properly exercise its discretion because it summarily denied his motion for individual jury *voir dire*. Defendant argues that because of an absence of findings of fact showing the trial court's rationale for denying the motion, the trial court's ruling was an abuse of discretion. We do not agree.

"In capital cases the trial judge for good cause shown may direct that jurors be selected one at a time, in which case each juror must first be passed by the State. These jurors may be sequestered before and after selection." N.C.G.S. § 15A-1214(j) (1997). A trial court's ruling on the issue of individual *voir dire* will not be disturbed absent an abuse of discretion. *State v. Short*, 322 N.C. 783, 788, 370 S.E.2d 351, 354 (1988).

Counsel for the defense, when arguing in support of this motion before the trial court, produced absolutely no evidence or argument as to why jurors should be questioned by individual *voir dire*. In fact, while discussing the motion before the trial court, defense counsel expressly acknowledged that there had been "a change of venue granted in this case and I do not imagine that the publicity in Davidson County is anywhere near the publicity in Davie County concerning these matters." Defendant has failed to identify any possible particular harm resulting from his having been required to question each of the prospective jurors in the presence of the other jurors. Therefore, defendant has failed to demonstrate that the trial court

abused its discretion by denying his motion for individual jury selection. *State v. Jones*, 336 N.C. 229, 261, 443 S.E.2d 48, 64, *cert. denied*, 513 U.S. 1003, 130 L. Ed. 2d 423 (1994). This assignment of error is overruled.

By another assignment of error, defendant contends that the trial court committed error by overruling his objection to parts of the prosecutor's closing argument and by failing to intervene *ex mero motu* during another portion of the closing argument made by the prosecutor.

[3] Defendant points to three arguments of the prosecutor during the guilt phase. First, counsel for defendant argued in his closing that the jury should find defendant guilty of second-degree murder. Then the prosecutor argued to the jury that defendant's tactic was to concede guilt to most, but not all, of the charges. Thus, the focus would be on reasonable doubt of premeditation and deliberation. The prosecutor rhetorically asked the jury, "He hasn't pled guilty to those three things, has he? Not a one of them." Defendant objected, and the trial court overruled the objection. There was no criticism of defendant for failing to plead guilty. Instead, the prosecutor was simply replying to the argument defense counsel had used. This was a proper argument.

[4] Defendant also contends the prosecutor raised speculative and irrelevant legal concerns to the jury, whose sole task at that point was to determine guilt or innocence. The prosecutor said to the jury, "Secondly, . . . you have heard all the evidence, now. If [defendant] had filed some motion to suppress this statement . . . [defendant objected and was overruled] and the Judge had suppressed this statement for some reason, what evidence would the State have to connect [defendant] to this case? Only Gabe Wilson. Deals have to be cut."

Defendant contends that by making these remarks, the prosecutor improperly commented on defendant's exercise of his right to fully and vigorously defend himself against the criminal charges in his case. We disagree. The prosecutor was rebutting the assertion made by defense counsel in closing arguments that State's witness Gabe Wilson was not believable because he was the beneficiary of an unnecessarily lenient plea bargain with the State. Defendant's assertion to the jury made it necessary for the prosecutor to reply and explain the State's rationale for entering into a plea agreement with Wilson. The prosecutor explained his reason in hypothetical terms

and did not tell the jury that defendant had made any motion to suppress his statements. The prosecutor's argument was a proper response to the argument made by defense counsel. *See State v. Perdue*, 320 N.C. 51, 61, 357 S.E.2d 345, 352 (1987); *State v. Abdullah*, 309 N.C. 63, 72-73, 306 S.E.2d 100, 106 (1983).

**[5]** Defendant's final challenge to the prosecutor's closing argument concerns a comment to which defendant did not object at trial. The prosecutor said in referring to defendant's statement to Detective Whitaker, "Now, you know, I'm sorry [defendant] did not read his statement. Maybe I ought to be over to his table and let him look at State's Exhibit 52 in this courtroom and take the next hour reading it. And then tell you what he thinks about it."

While defendant did not object at trial, he now argues that this was such an obviously improper comment on his right not to testify that the trial court should have intervened *ex mero motu*. The law in this area is well settled.

> A criminal defendant cannot be compelled to testify, and any reference by the State regarding his failure to do so violates an accused's constitutional right to remain silent. *Griffin v. California*, 380 U.S. 609, [14 L. Ed. 2d 106,] *reh. denied*, 381 U.S. 957[, 14 L. Ed. 2d 730] (1965). Well before *Griffin*, N.C.G.S. 8-54 provided that the failure of a defendant to testify creates no presumption against him. We have interpreted this statute as prohibiting the prosecution, the defense, or the trial judge from commenting upon the defendant's failure to testify. *See, e.g., State v. Bovender*, 233 N.C. 683, 65 S.E.2d 323 (1951) [*overruled on other grounds by State v. Barnes*, 324 N.C. 539, 380 S.E.2d 118 (1989)]; *State v. Humphrey*, 186 N.C. 533, 120 S.E. 85 (1923). A nontestifying defendant, however, has the right upon request to have the trial court instruct the jury that his failure to testify may not be held against him. *Carter v. Kentucky*, 450 U.S. 288 [, 67 L. Ed. 2d 241] (1981); *State v. Leffingwell*, 34 N.C. App. 205, 237 S.E.2d 550 (1977).

*State v. Randolph*, 312 N.C. 198, 205-06, 321 S.E.2d 864, 869 (1984). This Court has also determined:

> When the State directly comments on a defendant's failure to testify, the improper comment is not cured by subsequent inclusion in the jury charge of an instruction on a defendant's right not to testify. Rather,

this Court has held the error may be cured by a withdrawal of the remark or by a statement from the court that it was improper, followed by an instruction to the jury not to consider the failure of the accused to offer himself as a witness.

*[State v.] McCall*, 286 N.C. [472,] 487, 212 S.E.2d [132,] 141 [(1975)]. We consistently have held that when the trial court fails to give a curative instruction to the jury concerning the prosecution's improper comment on a defendant's failure to testify, the prejudicial effect of such an uncured, improper reference mandates the granting of a new trial.

*State v. Reid*, 334 N.C. 551, 556, 434 S.E.2d 193, 197 (1993) (citations omitted). However, "[c]omment on an accused's failure to testify does not call for an automatic reversal but requires the court to determine if the error is harmless beyond a reasonable doubt." *Id.* at 557, 434 S.E.2d at 198; *see* N.C.G.S. § 15A-1443(b) (1997).

Upon reviewing the record, it is clear that the prosecutor was not commenting on defendant's decision not to testify, but simply refuting the claim by the defense that Detective Whitaker's notes and recording of defendant's statement were inaccurate. "Since defendant made no objection during closing arguments, he must demonstrate that the prosecutor's closing arguments amounted to gross impropriety." *State v. Rouse*, 339 N.C. 59, 91, 451 S.E.2d 543, 560 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995). The prosecutor's comment was an isolated comment and not an extended reference to defendant's exercise of his right not to testify. Therefore, the trial court did not err by failing to intervene on its own motion. *See id.* at 96, 451 S.E.2d at 563; *State v. Taylor*, 337 N.C. 597, 614, 447 S.E.2d 360, 371 (1994); *State v. Randolph*, 312 N.C. at 206-07, 321 S.E.2d at 870. This assignment of error is overruled.

[6] In another assignment of error, defendant contends that the trial court committed prejudicial error by giving an improper peremptory instruction on the statutory mitigating circumstance of defendant's age, N.C.G.S. § 15A-2000(f)(7) (1997), which allowed the jury to improperly disregard a proven and uncontradicted statutory mitigating circumstance. Defendant orally requested a peremptory instruction on the statutory mitigating circumstance regarding his age at the time of the crime. The State conceded that all of the evidence showed defendant was eighteen when he committed the murder. The trial court gave the peremptory instruction on that circumstance. Defendant did not object to the peremptory instruction or request

any clarification for the jury. Defendant thus waived appellate review of this issue. *State v. Allen*, 339 N.C. 545, 554-56, 453 S.E.2d 150, 155-56 (1995), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396; N.C. R. App. P. 10(b)(2). Our review of this issue is limited to review for plain error. *Allen*, 339 N.C. at 555, 453 S.E.2d at 155. The trial court's instruction is in accord with the pattern jury instructions that have been approved by this Court. *State v. Simpson*, 341 N.C. 316, 348-49, 462 S.E.2d 191, 210 (1995), *cert. denied*, 516 U.S. 1161, 134 L. Ed. 2d 194 (1996). Therefore, we find no plain error. This assignment of error is overruled.

## PROPORTIONALITY REVIEW

[7] Having concluded that defendant's trial and separate capital sentencing proceeding were free of prejudicial error, we turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We must turn then to our final statutory duty of proportionality review.

In the present case, defendant was convicted of premeditated and deliberate first-degree murder. The jury also found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury and felonious breaking and entering. The jury found as an aggravating circumstance that the murder for which defendant stands convicted was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons. N.C.G.S. § 15A-2000(e)(11). Of the twenty mitigating circumstances submitted, one or more jurors found the following: (1) defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(6); (2) the offenses were committed while defendant

**STATE v. GREGORY**

[348 N.C. 203 (1998)]

was under the influence of mental and emotional disturbance; (3) the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired; (4) defendant had shown remorse for the offenses he committed; (5) defendant offered no resistance upon arrest and confessed shortly after the offenses; (6) at an early stage in the investigation, defendant admitted his guilt and gave a statement concerning his involvement in the crime; (7) defendant had no prior record for violence; and (8) defendant's father was in prison from the time defendant was age one until age nine.

In our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

This case has several features which distinguish it from the cases in which we have found the death penalty to be disproportionate. They are: (1) defendant killed a seventeen-year-old female victim in her home; (2) the victim, a young woman defendant had a relationship with for several years, was the mother of his infant son; (3) defendant assaulted with the intent to kill the victim's fifteen-year-old brother; and (4) defendant knew each of the victims and their family. We find it significant that in none of the cases in which this Court has found the death penalty disproportionate were there multiple victims or multiple major felonies committed during the crime.

We also compare this case with the cases in which we have found the death penalty to be proportionate. Although we review all of the cases in the pool of "similar cases" when engaging in our statutorily mandated duty of proportionality review, we have previously stated, and we reemphasize here, that we will not undertake to discuss or cite all of those cases each time we carry out that duty. *State v.*

*Williams,* 308 N.C. 47, 81, 301 S.E.2d 335, 356, *cert. denied,* 464 U.S. 865, 78 L. Ed. 2d 177 (1983). Here, it suffices to say we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence of death disproportionate.

After comparing this case carefully with all others in the pool of "similar cases" used for proportionality review, we conclude that it falls within the class of first-degree murders for which we have previously upheld the death penalty. For the foregoing reasons, we conclude that the sentence of death entered in the present case is not disproportionate.

Having considered and rejected all of defendant's assigned errors, we hold that defendant's trial and capital sentencing proceeding were free of prejudicial error. Therefore, the verdict and sentence of death entered against defendant must be and are left undisturbed.

NO ERROR.