STATE OF NORTH CAROLINA v. PAUL ANTHONY BROWN

No. 145A02

(Filed 22 August 2003)

## 1. Indigent Defendants— motion for state-funded expert assistance—substance induced mood disorder

The trial court did not abuse its discretion in a double first-degree murder case by denying the indigent defendant's ex parte motion for an additional expert on substance induced mood disorder, because: (1) defendant failed to meet his burden of showing particularized need when the trial court had already appointed a psychologist for defendant and nothing prevented that psychologist from consulting with other experts; (2) the original psychologist who diagnosed defendant's disorder testified concerning substance induced mood disorder during the sentencing phase of defendant's trial and that psychologist is an expert in drug abuse; (3) defendant failed to show how he was deprived of a fair trial without the additional expert assistance given the availability of two psychologists to assist him in the preparation of his case; and (4) defendant has not demonstrated a reasonable likelihood that the additional expert could have materially assisted him in the preparation of his case.

## 2. Evidence— prior crimes or bad acts—malicious wounding—impeachment

The trial court did not err in a double first-degree murder case by denying defendant's motion in limine seeking to prevent the State from using his 1986 Virginia conviction for malicious wounding to impeach him during cross-examination even though defendant contends under N.C.G.S. § 8C-1, Rule 403 that the probative value of the conviction was substantially outweighed by the danger of unfair prejudice to him, because: (1) N.C.G.S. § 8C-1, Rule 609 governs whether a prior conviction may be used to impeach a witness; (2) the language of Rule 609(a) that the evidence "shall be admitted" is mandatory, leaving no room for the trial court's discretion; and (3) although Rule 609(b) requires a balancing test for a conviction more than ten years old, the conviction in this case is less than ten years old.

**3. Homicide— first-degree murder—indictment—failure to allege aggravating circumstance**

Although defendant contends the failure of the indictment used to charge him with first-degree murder to allege any aggravating circumstance was a jurisdictional defect requiring that his death sentence be vacated and a sentence of life imprisonment without parole be imposed, this argument has already been rejected by our Supreme Court.

**4. Sentencing— nonstatutory mitigating circumstances— kicked drug habit—did not intend injury or harm to victim**

The trial court did not err in a double first-degree murder case by failing to peremptorily instruct the jury on two nonstatutory mitigating circumstances including that defendant successfully kicked his drug habit and that defendant did not intend any injury or harm to the victim toddler, because: (1) the evidence supporting these two mitigating circumstances were not controverted; and (2) while the trial court declined to provide peremptory instructions on these mitigating circumstances, the trial court nonetheless submitted both mitigating circumstances for the jury's consideration.

**5. Sentencing— capital—death penalty—proportionate**

The trial court did not err in a first-degree murder case by sentencing defendant to the death penalty, because: (1) defendant was convicted under the felony murder rule with the underlying felony being the first-degree murder of another victim that was committed with premeditation and deliberation; (2) the murders occurred inside the home; (3) none of the cases in which the death penalty has been disproportionate has involved the murder of a small child; and (4) the jury found the aggravating circumstances under N.C.G.S. § 15A-2000(e)(3) that defendant had been previously convicted of a violent felony and under N.C.G.S. § 15A-2000(e)(10) that defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Judge Howard E. Manning, Jr., on 11 August 2000 in Superior Court, Wayne County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 12 March 2003.

*Roy Cooper, Attorney General, by Barry S. McNeill, Special Deputy Attorney General, for the State.*

*James R. Glover for defendant-appellant.*

WAINWRIGHT, Justice.

On 14 April 1997, a Wayne County grand jury indicted Paul Anthony Brown (defendant) for the first-degree murder of Latashonette Cox and the first-degree murder of an infant, David Dishon Franklin. Defendant was tried capitally before a jury at the 30 March 1998 session of Superior Court, Wayne County. On 7 April 1998, the jury found defendant guilty of the premeditated, first-degree murder of Latashonette Cox. On the same date, the jury found defendant guilty of the first-degree murder of David Franklin under the felony murder rule.

At the time of defendant's trial, defendant was challenging his 1986 conviction in Virginia for malicious wounding. The State planned to use this prior conviction as an aggravating circumstance in the capital sentencing proceeding in the present case. Because of defendant's pending challenge to his Virginia conviction, the trial court in the present case postponed the sentencing portion of defendant's trial until the completion of the proceedings in Virginia. Defendant's challenge to his 1986 Virginia conviction was ultimately unsuccessful.

The trial court subsequently entered an order arresting judgment on the murder conviction for Latashonette Cox because it merged into the felony murder conviction of David Franklin. Accordingly, the sentencing proceeding of the case considered only the murder conviction for David Franklin. On 11 August 2000, following a capital sentencing proceeding, the jury in the present case recommended that defendant receive a sentence of death. The trial court entered judgment in accordance with that recommendation.

Evidence presented at the guilt-innocence phase of the trial showed that defendant and victim Cox were in a romantic relationship. Victim Franklin was the eighteen-month-old child of one of victim Cox's friends, Jessica Franklin.

On 21 December 1996, shortly before midnight, defendant and victim Cox got into an argument. Cox kicked defendant out of the apartment and told him to "get her presents from under the tree." Defendant left the apartment but was clearly upset. Around 11:45

p.m., defendant went to the residence of Mary Cox, victim Cox's mother, and complained that victim Cox had "kicked him out." Defendant appeared upset and Mary Cox could tell defendant had been drinking.

Defendant returned to victim Cox's apartment about twenty-five to thirty minutes after Cox had asked him to leave. Jessica Franklin allowed defendant into the apartment and spoke with him briefly. Franklin dozed off in a chair, but was startled by gunshots. Franklin watched as defendant shot and killed victim Cox and victim Franklin while they lay in bed. Victim Cox was leaning back in the bed in a defensive position and victim Franklin was on his back.

Jessica Franklin ran from the apartment and frantically knocked on the door of Cymantha Tate's apartment. Franklin was hysterical and said, "He shot my baby. He shot my sister." (Jessica Franklin commonly referred to victim Cox as her "sister," even though the two were unrelated.) Tate told Franklin to call the police and left the residence to help Franklin. As Franklin and Tate were returning to Tate's apartment, they saw defendant's vehicle driving away from the apartment complex. The police arrived within a few minutes. Franklin told police that defendant kept a nine-millimeter gun inside the residence and that defendant had committed the shootings.

Police Officer C.H. Newsome responded to the scene of the murders. He checked both victims and concluded they were dead. When Officer Newsome swept the apartment for the gunman, he found two children sleeping in another room.

At approximately 12:45 a.m. on 22 December 1996, Emergency Medical Technician Jerry Barnes and his partner responded to the call at the murder scene. They checked both victims and verified that they were dead.

In the early morning of 22 December 1996, Goldsboro Police Officer Ron Melvin searched the crime scene and found eight shell casings and seven bullet fragments. State Bureau of Investigation Special Agent Al Langly was admitted at trial as an expert in forensic firearms examination. Special Agent Langly analyzed the evidence submitted to him by the Goldsboro Police Department. He determined that eight bullets had been fired. He further concluded that all eight bullets had been fired from the same gun. Special Agent Langly also determined that the weapon used in the murders was a nine-millimeter, semiautomatic handgun that would have held eight or nine

bullets in the clip. The gun would have had a safety device that had to be manually switched off.

On 22 December 1996, Dr. John Butts, chief medical examiner for the State of North Carolina, participated in autopsies on the bodies of both victims. Dr. Butts was admitted at trial as an expert in forensic pathology.

The autopsy of victim Franklin, the infant, revealed that Franklin had three gunshot wounds—one to his right chin, one to his right chest, and one to his right abdomen. Franklin had two exit wounds in his back. One bullet struck Franklin in the jawbone and came to rest against the base of his skull. A second bullet struck Franklin in the chest and damaged his heart and left lung before exiting his back. A third bullet struck Franklin in the abdomen and damaged his liver and right lung before exiting his back. All of Franklin's wounds were secondary wounds, meaning that the bullets passed through the body of victim Cox before striking Franklin. The cause of Franklin's death was multiple gunshot wounds.

The autopsy of victim Cox revealed that Cox's death was also caused by multiple gunshot wounds. Indeed, victim Cox suffered at least ten gunshot wounds. Among Cox's injuries was a gunshot wound from a bullet that struck the inner corner of her right eye, struck her jaw, and exited her body through the neck. This wound indicated the gun was in close proximity to Cox when it was fired. Another bullet struck the base of Cox's left ear, passed through the spinal canal, damaged the sixth and seventh vertebra in her neck, and lodged in her shoulder. This wound would have caused instant paralysis in the lower extremities. At least three bullets that passed through Cox's hand were described as defensive wounds, incurred while attempting to ward off an attack. Extensive internal bleeding continued for a time following the shooting; this showed that Cox's heart continued to beat during this time.

## PRETRIAL ISSUES

[1] In his first assignment of error, defendant argues that his state and federal constitutional rights to due process and effective assistance of counsel were violated when the trial court denied his *ex parte* motion for an expert on "substance induced mood disorder."

The trial court approved defendant's initial *ex parte* application for the assistance of a mental health expert, and defense counsel chose Dr. Gary Bachara, a psychologist, to review defendant's mental

status. Based on his testing and examination of defendant, Dr. Bachara concluded that defendant was suffering from "substance induced mood disorder, which . . . brings on a psychosis." However, because Dr. Bachara contended that he was only "generally familiar" with this disorder, he recommended that defendant's counsel retain "a specialist in order to explain the diagnosis and the physiology of this diagnosis" to the jury. Defendant's counsel subsequently contacted Dr. Brian McMillen, with the Department of Pharmacology and Toxicology at the East Carolina University School of Medicine, who informed them of the fee for his services. Defendant's counsel accordingly made an *ex parte* motion for the appointment of Dr. McMillen as an expert in substance induced psychosis. The trial court denied this motion.

Indigent criminal defendants are entitled to mental health experts upon a showing to the trial judge that "[the defendant's] sanity at the time of the offense is to be a significant factor at trial." *Ake v. Oklahoma*, 470 U.S. 68, 83, 84 L. Ed. 2d 53, 66 (1985). Although *Ake* dealt specifically with expert psychiatric assistance, this Court has repeatedly extended the rationale in *Ake* to other areas of expert assistance. *See, e.g., State v. Moore*, 321 N.C. 327, 344, 364 S.E.2d 648, 656 (1988) (fingerprint expert); *State v. Penley*, 318 N.C. 30, 51-52, 347 S.E.2d 783, 795-96 (1986) (pathologist); *State v. Johnson*, 317 N.C. 193, 199, 344 S.E.2d 775, 779 (1986) (medical expert). Thus, we have held that a defendant can obtain state-funded expert assistance only upon a particularized showing that: " '(1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it will materially assist him in the preparation of his case.' " *State v. Parks*, 331 N.C. 649, 656, 417 S.E.2d 467, 471 (1992) (quoting *Moore*, 321 N.C. at 335, 364 S.E.2d at 652); *see also* N.C.G.S. § 7A-450(b) (2001) (requiring the State to provide indigent persons with "the necessary expenses of representation"). The determination of whether a defendant has made an adequate showing of particularized need lies largely within the discretion of the trial court. *State v. Cummings*, 353 N.C. 281, 293, 543 S.E.2d 849, 856, *cert. denied*, 534 U.S. 965, 151 L. Ed. 2d 286 (2001). While particularized need is a fluid concept determined on a case-by-case basis, " '[m]ere hope or suspicion that favorable evidence is available is not enough.' " *State v. Page*, 346 N.C. 689, 696-97, 488 S.E.2d 225, 230 (1997) (quoting *State v. Holden*, 321 N.C. 125, 136, 362 S.E.2d 513, 522 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988)), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 651 (1998).

In the present case, defendant's written motion for additional expert assistance was presented and heard *ex parte*. At the *ex parte* hearing, defense counsel informed the court that Dr. Kenneth Feigenbaum, a Virginia state-appointed forensic psychologist, had previously diagnosed defendant with "a substance induced psychosis type of situation" in connection with defendant's 1986 Virginia trial for malicious wounding. Dr. Feigenbaum concluded that defendant's ingestion of phencyclidine (PCP) had caused defendant to be unable to distinguish right from wrong at the time of the assault. In the present case, defendant contended that the appointment of Dr. McMillen was necessary to support either an insanity or diminished capacity defense. Moreover, defendant contended that the expert testimony would be necessary in a collateral challenge of the Virginia conviction, which the State intended to use as an aggravating circumstance.

Based on the evidence presented by defendant, the trial court concluded that defendant had not met his burden of showing particularized need. The trial court noted that it had already appointed a psychologist for defendant and that "nothing is to prevent Dr. Bachara from consulting with other experts."

After thoroughly reviewing the entire record,[1] we find no error in the trial court's decision to deny defendant's *ex parte* motion for the appointment of Dr. McMillen. Dr. Bachara interviewed and tested defendant over a period of four consecutive weeks for "four or five hours" at a time. From these interviews, Dr. Bachara concluded that defendant suffered from "a substance induced mood disorder, which actually brings on a psychosis." Defendant has failed to show what Dr. McMillen could have contributed to the confirmation of Dr. Bachara's already-completed diagnosis. Moreover, Dr. Feigenbaum, the original psychologist who diagnosed defendant's disorder, testified concerning substance induced mood disorder during the sentencing phase of defendant's trial. In a separate portion of his brief, defendant concedes that Dr. Feigenbaum is an expert in drug abuse.

Defendant has failed to show us that he was "deprived of a fair trial without the expert assistance" of Dr. McMillen, given the availability of both Dr. Bachara and Dr. Feigenbaum to assist him in the

---

1. At defendant's request, the written *ex parte* motion requesting the appointment of an additional expert witness was sealed. We thoroughly examined the documents under seal and concluded that the contents provide no additional evidence which would have enabled defendant to meet his burden of demonstrating "particularized need."

STATE v. BROWN

[357 N.C. 382 (2003)]

preparation of his case. *See Parks*, 331 N.C. at 656, 417 S.E.2d at 471. Likewise, defendant has not demonstrated "a reasonable likelihood" that Dr. McMillen "[c]ould [have] materially assist[ed] him in the preparation of his case." *Id.* Rather, defendant has offered " 'little more than undeveloped assertions that the requested assistance would be beneficial.' " *State v. Artis*, 316 N.C. 507, 512, 342 S.E.2d 847, 851 (1986) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 323-24 n.1, 86 L. Ed. 2d 231, 236 n.1 (1985)). Accordingly, we find no abuse of discretion in the trial court's decision to deny defendant's *ex parte* motion that Dr. McMillen be appointed as an expert on substance induced mood disorder.

This assignment of error is without merit.

[2] In his next assignment of error, defendant objects to the trial court's denial of his motion *in limine* seeking to prevent the State from using his 1986 Virginia conviction for malicious wounding to impeach him during cross-examination. Defendant contends that his conviction could not be used for impeachment purposes because the "probative value [of the conviction was] substantially outweighed by the danger of unfair prejudice" to him. N.C.G.S. § 8C-1, Rule 403 (1992).

Whether a prior conviction may be used to impeach a witness is governed by N.C.G.S. § 8C-1, Rule 609, which provides in pertinent part:

(a) *General Rule.*—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime punishable by more than 60 days confinement shall be admitted if elicited from him or established by public record during cross-examination or thereafter.

(b) *Time limit.*—Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to

use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

N.C.G.S. § 8C-1, Rule 609(a), (b) (1992) (amended 1999).

In the present case, the trial court noted that defendant was convicted in 1986 of malicious wounding and that defendant remained in prison for this offense until 1991 or 1992. Defendant's trial in the present case occurred in 1998. Accordingly, the 1986 Virginia conviction does not fall under the exclusionary provisions of Rule 609(b) because the date of trial in the present case is well within ten years from the date of defendant's release from confinement in Virginia. *See id.*

Defendant nonetheless urges this Court to apply the balancing test of N.C. R. Evid. 403 to his conviction. Defendant's argument fails to take into account the clearly expressed intent of the legislature. The language of Rule 609(a) ("shall be admitted") is mandatory, leaving no room for the trial court's discretion. Moreover, while N.C. R. Evid. 609(b) requires a balancing test of the probative value and prejudicial effect of a conviction more than ten years old, this provision is explicitly absent from 609(a). Indeed, the official comments to Rule 609(a) reveal an unequivocal intention to diverge from the federal requirement of a balancing test. N.C.G.S. § 8C-1, Rule 609 official commentary, para. 4 ("Subdivision (a) also deletes the requirement in Fed. R. Evid. 609(a) that the court determine that the probative value of admitting evidence of the prior conviction outweighs its prejudicial effect to the defendant."). We therefore hold that the trial court did not err in denying defendant's motion *in limine* seeking to exclude his 1986 conviction.

This assignment of error is without merit.

[3] In another assignment of error, defendant argues that the failure of the murder indictment to allege any aggravating circumstance was a jurisdictional defect requiring that his death sentence be vacated and a sentence of life imprisonment without parole be imposed. We considered and rejected this argument in *State v. Hunt*, 357 N.C. 257, 582 S.E.2d 593 (2003).

This assignment of error is therefore without merit.

## CAPITAL SENTENCING PROCEEDING

[4] Defendant next assigns as error the trial court's failure to peremptorily instruct the jury on two nonstatutory mitigating

circumstances. Specifically, defendant argues that peremptory instructions were warranted on the following nonstatutory mitigating circumstances: (1) defendant "successfully kicked his drug habit," and (2) defendant "did not intend any injury or harm to David Dishon Franklin."

A trial court is required to give a peremptory instruction on a mitigating circumstance only when the evidence supporting the mitigating circumstance is uncontroverted. *State v. Womble*, 343 N.C. 667, 683, 473 S.E.2d 291, 300 (1996), *cert. denied*, 519 U.S. 1095, 136 L. Ed. 2d 719 (1997). In the present case, the evidence supporting the two mitigating circumstances at issue was not uncontroverted. Moreover, while the trial court declined to provide peremptory instructions on these mitigating circumstances, the trial court nonetheless submitted both mitigating circumstances for the jury's consideration. As such, defendant was not deprived of the potential benefit of the mitigating circumstances. Accordingly, we find no error in the trial court's refusal to peremptorily instruct the jury on these mitigating circumstances.

First, the evidence was controverted as to whether defendant had "successfully kicked his drug habit." At trial, the prosecutor properly argued that the evidence was in dispute as to whether defendant in fact had a drug habit. Dr. Kenneth Feigenbaum testified that PCP does not provide an extended physiological craving and does not usually cause any withdrawal. Dr. Feigenbaum further testified that PCP addiction "tends to be primarily psychological." While Dr. Feigenbaum testified at one point that defendant had suffered "some degree of addiction," Dr. Feigenbaum later testified that defendant's condition could also be referred to as PCP "abuse." Dr. Feigenbaum admitted that he "was not being very technical" about differentiating between addiction and abuse. Dr. Feigenbaum then agreed that the distinction between abuse and addiction is an important one because "a person can abuse a drug and be an abuser by choice or a person can be an addict and perhaps have less of a choice when they take a drug."

In any event, the record does not reveal uncontroverted evidence that defendant had a "drug habit." As such, the trial court properly refused to peremptorily instruct the jury on this mitigating circumstance.

Similarly, the evidence was controverted as to whether defendant "did not intend any injury or harm to David Dishon Franklin." When

defendant requested a peremptory instruction on this mitigating circumstance, the trial court properly stated, "I'm not going to give a peremptory on that. One of the reasons is I'm really getting into a question of opinion on that, the Court's opinion, and I think the jury's job is to consider what happened, not mine." Additionally, during the sentencing proceeding, Jessica Franklin testified that when she allowed defendant back into the apartment on the night of the murders, she told defendant that "[victim Cox] was back there [in the bedroom] putting my baby to sleep." Defendant responded, "Oh," and became very quiet. This evidence reveals that defendant may have had notice that victim Franklin was in the bedroom where defendant entered and fired numerous shots into the bed.

We cannot say that the evidence that defendant did not intend to harm victim Franklin was uncontroverted. Accordingly, the trial court properly refused to give the jury a peremptory instruction on the mitigating circumstance.

This assignment of error is overruled.

## PRESERVATION ISSUES

Defendant raises two additional issues that this Court has previously decided contrary to defendant's position: (1) the failure of the indictment to allege premeditation and deliberation, or that the killing occurred in the course of a specified felony, and (2) the definition of mitigating circumstances in the trial court's charge to the jury.

We have considered defendant's contentions on these issues and find no reason to depart from our prior holdings. We therefore reject these arguments.

## PROPORTIONALITY REVIEW

[5] Having concluded that defendant's trial and capital sentencing proceeding were free from prejudicial error, we are required to review and determine: (1) whether the evidence supports the jury's finding of the aggravating circumstances upon which the sentence of death was based; (2) whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2) (2001).

As a collateral matter, we first note that defendant argues that this Court's standards for proportionality review are vague and arbi-

trary, depriving him of his constitutional rights to notice, to effective assistance of counsel, to due process, and to be free from cruel and unusual punishment. We have previously rejected this issue in *State v. Simpson*, 341 N.C. 316, 358-59, 462 S.E.2d 191, 215-16 (1995), *cert. denied*, 516 U.S. 1161, 134 L. Ed. 2d 194 (1996), and see no reason to depart from our prior holding.

In the present case, the trial court ordered that defendant's first-degree murder conviction for victim Cox be merged into defendant's first-degree felony murder conviction for victim Franklin. Following a capital sentencing proceeding, the jury found both aggravating circumstances submitted: (1) defendant had been previously convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3); and (2) defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person, N.C.G.S. § 15A-2000(e)(10).

The trial court submitted three statutory mitigating circumstances for the jury's consideration: (1) defendant has no significant history of prior criminal history, N.C.G.S. § 15A-2000(f)(1); (2) the capital felony was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); and (3) the catchall mitigating circumstance of "[a]ny other circumstance arising from the evidence which the jury deems to have mitigating value," N.C.G.S. § 15A-2000(f)(9). The jury did not find that any of these statutory mitigating circumstances existed. Of the thirty-five nonstatutory mitigating circumstances submitted by the trial court, the jury found twenty to exist.

After thoroughly examining the record, transcripts, briefs, and oral arguments, we conclude the evidence fully supports the aggravating circumstances found by the jury. Moreover, we find no indication the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We now turn to our final statutory duty of proportionality review.

The purpose of proportionality review is to "eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *Holden*, 321 N.C. at 164-65, 362 S.E.2d at 537. Additionally, proportionality review acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65

L. Ed. 2d 1137 (1980). "In our proportionality review, we must compare the present case with other cases in which this Court has ruled upon the proportionality issue." *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

We have found the death sentence disproportionate in eight cases. *State v. Kemmerlin*, 356 N.C. 446, 573 S.E.2d 870 (2002); *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate. First, defendant was convicted under the felony murder rule, with the underlying felony being the first-degree murder of victim Cox. "We find it significant that in none of the cases in which this Court has found the death penalty disproportionate were there multiple victims or multiple major felonies committed during the crime." *State v. Gregory*, 348 N.C. 203, 213, 499 S.E.2d 753, 760, *cert. denied*, 525 U.S. 952, 142 L. Ed. 2d 315 (1998). Defendant committed a premeditated and deliberate murder of victim Cox, firing at least eight rounds from a semiautomatic handgun into her body at close range. Some of these bullets apparently passed completely through victim Cox's body, entering and fatally wounding eighteen-month-old David Franklin as he lay on the bed beside victim Cox. These murders occurred inside the home, a factor we have noted to "shock[] the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure." *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

We additionally note that none of the cases in which the death penalty has been held disproportionate has involved the murder of a small child. "[S]uch a factor [weighs] heavily against this adult defendant, as we have stated before that murders of small children, as well as teenagers, 'particularly [shock] the conscience.' " *State v.*

*Walls*, 342 N.C. 1, 72, 72 n.3, 463 S.E.2d 738, 777, 777 n.3 (1995) (quoting *State v. Artis*, 325 N.C. 278, 344, 384 S.E.2d 470, 508 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990), and noting that although *Artis* is no longer in the proportionality pool, "the principle remains the same"), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 794 (1996).

Finally, "[i]n none of the cases in which the death penalty was found to be disproportionate has the jury found the (e)(3) aggravating circumstance." *State v. Peterson*, 350 N.C. 518, 538, 516 S.E.2d 131, 143 (1999), *cert. denied*, 528 U.S. 1164, 145 L. Ed. 2d 1087 (2000). "The jury's finding of the prior conviction of a violent felony aggravating circumstance is significant in finding a death sentence proportionate." *State v. Lyons*, 343 N.C. 1, 27, 468 S.E.2d 204, 217, *cert. denied*, 519 U.S. 894, 136 L. Ed. 2d 167 (1996). In the present case, the jury found not only the (e)(3) aggravating circumstance, it also found the (e)(10) aggravating circumstance. *See* N.C.G.S. § 15A-2000 (e)(10) (2001) ("The defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person.")

We also compare this case with the cases in which this Court has found the death penalty to be proportionate. *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we review all cases in that pool when engaging in our statutorily mandated duty of proportionality review, we have repeatedly stated that "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.*; *accord Gregory*, 348 N.C. at 213, 499 S.E.2d at 760. After thoroughly analyzing the present case, we conclude this case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate.

Whether a sentence of death is "disproportionate in a particular case ultimately rest[s] upon the 'experienced judgements' of the members of this Court." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). Based upon the characteristics of this defendant and the crimes he committed, we are convinced that the sentence of death recommended by the jury and ordered by the trial court in the instant case is neither disproportionate nor excessive.

Accordingly, we conclude defendant received a fair trial and capital sentencing proceeding, free from prejudicial error. The judg-

ment of the trial court sentencing defendant to death must therefore be left undisturbed.

NO ERROR.